**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| RAMONA RAMOS, *et al.*,<br><br>    **Plaintiffs,**<br><br>        v.<br><br>MENNONITE GENERAL HOSPITAL,<br>INC., *et al.*,<br><br>    **Defendants.** | **CIVIL NO. 23-1345 (RAM)** |

<u>**OPINION AND ORDER**</u>

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is co-defendants Dr. Yaritza G. Suárez-Rodríguez ("Dr. Suárez") and her insurer's, Sindicato de Aseguradores para la Suscripción Conjunta del Seguro de Responsabilidad Profesional Médicohospitalaria ("SIMED"), *Motion for Judgement as a Matter of Law or in the Alternative for a New Trial* and co-defendant South Central Emergency Group, LLC's ("South-Central") *Motion for Judgment as a Matter of Law, or in the Alternative to Alter or Amend Judgment, for Remittitur or in the Alternative for New Trial with Memorandum of Law in Support in Compliance with Local Rule 7(A)* (collectively, the "*Motions*").[1]

---

[1] South-Central's *Motion* was originally filed at Docket No. 196 and joined by Dr. Suárez-Rodríguez and her insurer, Sindicato de Aseguradores para la Suscripción Conjunta del Seguro de Responsabilidad Profesional Médicohospitalaria ("SIMED"), and by Dr. Alejandro Marmolejo-Morales and his insurer, SIMED, except as to part VI—the section regarding the independent contractor issue. (Docket Nos. 197 and 198). Due to an error in its original filing, South-central later refiled their *Motion* at Docket No. 200, and was joined only by Dr. Suárez-Rodríguez and her insurer, SIMED. (Docket No. 201).

(Docket Nos. 199 and 200, respectively). For the following reasons, the *Motions* are **DENIED**.

## I.   BACKGROUND

On Monday, October 27, 2025, a civil jury trial began in this matter. On Friday, December 5, 2025, the jury found in favor of Plaintiffs and against Defendants Dr. Suárez, Dr. Alejandro Marmolejo-Morales ("Dr. Marmolejo"), and Mennonite General Hospital, Inc ("MGH"). The jury found that each of the defendants deviated from the applicable standards of care and that such deviations were an adequate cause of Mr. Alex Jiménez-Ramos' ("Mr. Jiménez") death. (Docket No. 190 at 1-2). The jury also found such deviations were an adequate cause of damages to Plaintiffs. Id. at 3. Plaintiffs Ramona Ramos, Roberto Jiménez, Letsi Jiménez ("Ms. Jiménez"), Alex Jiménez Jr. ("Mr. Jiménez Jr."), and minor Onialex Jiménez ("OJ") were awarded $200,000 each (for a total of $1,000,000) in compensatory damages for emotional pain and suffering against Dr. Suárez, Dr. Marmolejo, and MGH's Nursing Staff. Id. at 4. The jury apportioned percentages of liability for Plaintiffs' damages as follows: (1) Dr. Suárez 15%; (2) Dr. Marmolejo 40%; and (3) MGH's Nursing Staff 45%. Id. at 5. Notwithstanding the foregoing allocations, the Court adjudged that Defendants Dr. Suárez and her insurer, SIMED, Dr. Marmolejo and his insurer, SIMED, MGH and its insurer, Medical Protective

Company, and South-Central were jointly and severally liable for Plaintiffs damages. (Docket No. 192).

On January 7, 2026, Dr. Suárez, and her insurer, SIMED, filed their *Motion*. (Docket No. 199). Co-defendants argue Plaintiffs did not offer a legally sufficient evidentiary basis upon which a reasonable jury could find that any act or omission by Dr. Suárez was the adequate cause of Mr. Jiménez' death. Id. at 2. Co-defendants request the Court issue a judgment as a matter of law dismissing all claims against Dr. Suárez and her insurer with prejudice pursuant to Fed. R. Civ. P. 50(b) ("Rule 50"). Id. at 11. In the alternative, Co-defendants request the Court grant a new trial pursuant to Fed. R. Civ. P. 59("Rule 59").

On the same day, South-Central filed its *Motion*. (Docket No. 200). South-Central maintains it is an independent contractor and, as such, not liable under applicable Puerto Rico law. Id. at 23. South-Central posits the Court erred in denying its request to instruct the jury regarding the independent contractor issue. Id. South-Central also alleges Plaintiffs' evidence regarding emotional damages was insufficient to justify the amount the jury awarded them. Id. at 5. South-Central requests the Court issue a judgment as a matter of law dismissing the complaint with prejudice as to South-Central. Id. at 25. In the alternative, South-Central requests the Court order remittitur to reduce the damages awarded

to Ms. Jiménez, Mr. Jiménez Jr., and minor OJ or grant a new trial on the issue of damages. Id.

On January 20, 2026, Plaintiffs filed an *Omnibus Opposition to SCEG's and Dr. Suarez's Renewed Motions for Judgment as a Matter of Law, or in the Alterntive to Alter or Amend Judgment, for Remittitur or in the Alternative for New Trial at Docket Nos. 199 And 200* ("*Opposition*"). (Docket No. 205). Plaintiffs aver the Court should deny the *Motions* because Defendants did not meet the Rule 50 and Rule 59 standards. Id. at 3. Plaintiffs maintain they presented sufficient evidence at trial, including expert testimony, upon which a reasonable jury could conclude that Dr. Suárez's acts or omissions were an adequate cause of Mr. Jiménez's death. Id. at 28. Plaintiffs also allege they presented sufficient evidence of emotional pain and suffering through their own testimonies to justify the jury's award of damages to all Plaintiffs. Id. at 18. Plaintiffs further argue that South-Central admitted vicarious liability in pretrial filings and that it did not present comprehensive evidence as to whether it is an independent contractor at trial. Id. at 8.

## II.  APPLICABLE LAW

### A.   Judgement as a Matter of Law Under Rule 50

Pursuant to Rule 50, a party may renew a motion for judgment as a matter of law "[n]o later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a

verdict, no later than 28 days after the jury was discharged[.]"
Fed. R. Civ. P. 50(b). In ruling on the renewed motion, the court
may: "(1) allow judgment on the verdict, if the jury returned a
verdict; (2) order a new trial; or (3) direct the entry of judgment
as a matter of law." Id. "Courts may only grant a judgment
contravening a jury's determination when the evidence points so
strongly and overwhelmingly in favor of the moving party that no
reasonable jury could have returned a verdict adverse to that
party." Rivera Castillo v. Autokirey, Inc., 379 F.3d 4, 9 (1st
Cir. 2004) (internal quotation marks and citation omitted). In
conducting this analysis, "courts may not consider the credibility
of witnesses, resolve conflicts in testimony, or evaluate the
weight of the evidence." Annoni Mesias v. Hosp. HIMA San Pablo,
2021 WL 1125019 at *1 (D.P.R. 2021) (internal quotation marks and
citation omitted).

B.    New Trial Under Rule 59

Rule 59 states that "[t]he court may, on motion, grant a new
trial on all or some of the issues—and to any party— . . . after
a jury trial, for any reason for which a new trial has heretofore
been granted in an action at law in federal court[.]" Fed. R. Civ.
P. 59(a)(1). "A district court's power to grant a motion for new
trial is much broader than its power to grant a Rule 50 motion."
Rodriguez-Valentin, 2022 WL 556194, at *5 (quoting Jennings v.
Jones, 587 F.3d 430, 436 (1st Cir. 2009)) (cleaned up). On a Rule

59 motion, "the court need not take the evidence in the light most favorable to the nonmoving party." Id. at *21. However, trial judges do not sit as thirteenth jurors. Id. Therefore, the First Circuit has stated that, "when reviewing a denial of a motion for new trial that was, at bottom, based on sufficiency of the evidence, the standards under Rule 50 and Rule 59 effectively merge." Id. (internal quotation marks and citations omitted).

### III. DISCUSSION

#### A.  Causation

It is well settled that, to establish causality in a medical malpractice action under Puerto Rico law, a plaintiff must prove by a preponderance of the evidence[2] that the defendant's negligent conduct was the factor that "most probably" caused the harm to the plaintiff. Lama v. Borras, 16 F.3d 473, 478 (1st Cir. 1994) (citations omitted). Causation "need not be established with mathematical accuracy; **neither must all other cause of damage be eliminated**." Id. (citation omitted) (emphasis added).

Dr. Suárez contends Plaintiffs' expert, Dr. Edwin Miranda-Aponte ("Dr. Miranda"), testified that Dr. Suárez's end-of-shift orders were aimed at saving Mr. Jiménez's life. (Docket No. 199 at 8). Dr. Suárez further maintains Dr. Miranda testified that the "point of no return," when Mr. Jiménez's life was beyond saving,

---

[2] "Preponderance of the evidence" only means "more likely true than not." Diaz-Alarcon v. Flandez-Marcel, 944 F.3d 303, 305 n.2 (1st Cir. 2019) (internal quotation marks and citation omitted).

occurred eight to nine hours after Dr. Suárez ended her shift. Id. Dr. Suárez points to Dr. Marmolejo's actions and omissions as the true adequate cause of Mr. Jiménez's death and avers that any actions or omissions on her part do not typically lead to the death of a patient. Id. at 11. Therefore, Dr. Suárez alleges the jury had no reasonable basis upon which to find that her actions or omissions were an adequate cause to Mr. Jiménez death and to find her liable. Id. at 9.

Plaintiffs, on the other hand, argue Dr. Miranda established Dr. Suárez's deviations from the standard of care—such as an order for 50 ml of IV fluids which Dr. Miranda described as suboptimal, failure to perform a physical exam on Mr. Jiménez after his CT scan results arrived, and failure to contact a surgeon after the radiologist recommended to do so. (Docket No. 205 at 29). Plaintiffs aver Dr. Miranda established that Dr. Suárez's actions were not aggressive enough given Mr. Jiménez's state, that she did not duly follow up on her medical order fulfillment, and that she did not effectively transfer the care of Mr. Jiménez to Dr. Marmolejo. Id. at 31. Finally, Plaintiffs maintain the fact that Dr. Marmolejo's interventions contributed to Mr. Jiménez's death does not negate that Dr. Suarez's actions or omissions also contributed to his death. Id. at 32.

The Court agrees with Plaintiffs. While Dr. Miranda testified that, in his opinion, Dr. Suárez's actions were aimed at saving

Mr. Jiménez's life, he also testified that Dr. Suárez failed to stabilize Mr. Jiménez despite him being in her care for around six (6) hours. (Docket No. 199-2 at 4 and Docket No. 205-3 at 11). Dr. Miranda also testified that, given Mr. Jiménez's state, he should have been sent to the Intensive Care Unit ("ICU") upon arrival at the hospital or, in the alternative, once the radiologist's report arrived at 11:14 p.m.—both of which occurred while Mr. Jiménez was under Dr. Suárez's care. (Docket No. 205-12 at 6). Dr. Miranda further testified that Mr. Jiménez's oxygenation levels indicated a need "to obtain a permanent airway and to connect it to the mechanical ventilator," which Dr. Suárez failed to do, and that Dr. Suárez also failed to order serial saturations which were necessary to ascertain whether the plan to stabilize Mr. Jiménez was working. Id. at 8. When asked about Mr. Jiménez's first cardiac arrest, Dr. Miranda testified that it was "inevitable" because the physicians never stabilized him, despite multiple opportunities, and his condition continued to worsen every hour since his arrival at the hospital. Id. at 10. Moreover, Dr. Suárez testified she did not consult a surgeon regarding Mr. Jiménez's condition despite the radiologist's recommendation to do so—a recommendation he issued in writing and in a telephone call with Dr. Suárez. (Docket No. 205-3 at 11). Dr. Marmolejo, for his part, testified that Dr. Suárez did not mention the radiologist's recommendation to consult a surgeon when handing off Mr. Jiménez's care. (Docket No. 205-5

at 7).

Dr. Suárez's relies on Dr. Marmolejo's actions or omissions after she handed off Mr. Jiménez's care as exoneration for her own actions or omissions' contribution to Mr. Jiménez's death. However, the law only requires a showing of proximate causation—that Dr. Suárez's actions or omissions played a substantial part in bringing about Mr. Jiménez's death, and that his death was either a direct result of a reasonably probable consequence of the act or omission. The law does not require a showing that Dr. Suárez's actions or omissions were the sole or final cause of Mr. Jiménez's death. *See* Lama, 16 F.3d at 477. Any subsequent negligence by Dr. Marmolejo does not necessarily break the causal chain or exonerate Dr. Suárez of the harm.

Testimony presented at trial included evidence that, among other things, Mr. Jiménez continued to deteriorate while he was in the hospital and that Dr. Suárez should have transferred Mr. Jiménez to the ICU, intubated the patient due to his low oxygenation levels, consulted a surgeon as per the radiologist's recommendation, and ordered continuous saturation level monitoring, all of which she failed to do. Therefore, the jury was presented with sufficient testimony allowing them to rationally determine that Dr. Suárez's negligence was the factor that "most probably" caused Mr. Jiménez's death, without excluding other causes of harm. *See* Lama, 16 F.3d at 478; *see also* Correa-Carrillo

v. Grupo HIMA San Pablo-Fajardo Inc., 594 F. Supp. 3d 414 (D.P.R. 2022), aff'd sub nom. Carrillo v. Grupo Hima San Pablo (Fajardo), Inc., 2026 WL 528601 (1st Cir. 2026). "[C]redibility determinations are for the jury," and here, the jury heard the informed opinions of Dr. Miranda and apparently afforded them credibility. Muniz v. Rovira, 373 F.3d 1, 5 (1st Cir. 2004) (internal quotation marks and citation omitted). Dr. Miranda's testimony, along with other evidence presented, viewed in the light most favorable to the verdict, supports the jury's determination. See Lama, 16 F.3d at 475.

Consequently, the Court **DENIES** Dr. Suárez's renewed Rule 50 motion and her Rule 59 motion.

### B.    Independent Contractor

In Puerto Rico, an independent contractor is a person who, given the nature of their role and the way in which they provide services, is effectively their own employer while an employee is a person who provides services to an employer and in exchange receives a salary, wage, commission, bonus, gratuity, or any other form of compensation. See Machado-Mariscal v. Bayamon Med. Ctr. Corp., 2024 WL 5405379 (D.P.R. 2024), report and recommendation adopted, 2024 WL 5405261 (D.P.R. 2024) (citing Whittenburg v. Col. Ntra. Sra. Del Carmen, 182 D.P.R. 937, 952 (2011)). There is a presumption an individual is an independent contractor if they have an employer identification number; have declared that they

have their own business on income tax returns; the employment relationship was established by written contract; they have been required by contract to have the necessary licenses or permits to perform the services; and they meet three or more of the following requirements: (1) they maintain control and discretion over how the work will be performed; (2) they maintain control over when the work will be performed; (3) they are not required to provide services on an exclusive basis; (4) they are free to hire employees; or (5) they have made investments in the business through the acquisition of tools, equipment, licenses, or workspaces. *See* Art. 2.3 of the Labor Transformation and Flexibility Act, Act No. 4-2017 (29 L.P.R.A. § 122b). In conducting this kind of analysis, courts have established that the determining factor is the degree of control that the contracted person must carry out their assignment in a truly independent manner, as opposed to the control exercised by the person who contracts and benefits from their services. *See* Cruz v. Municipality of Lajas, 2022 WL 2077915 (D.P.R. 2022) (citing S.L.G. Hernández-Beltrán v. TOLIC, 151 D.P.R. 754, 768 (2000)). Article 1540 of the Puerto Rico Civil Code limits vicarious liability when services are rendered by independent contractors. 31 L.P.R.A. § 10805. A principal who contracts for professional services is not liable for the contractor's negligence unless the activity assigned is

unreasonably dangerous, or the principal retains control over the manner and means of the work. Id.

South-Central argues the evidence presented at trial established that the emergency room physicians were independent contractors, and that no evidence was presented that the services rendered constituted an unreasonably dangerous activity under Article 1540 of the Puerto Rico Civil Code. (Docket No. 199 at 18). South-Central also avers the Court erred in refusing to give an independent contractor instruction to the jury.[3] Id. at 23. Accordingly, South-Central requests judgement as a matter of law pursuant to Rule 50 or, in the alternative, an amendment to the judgement pursuant to Rule 59(e). Id. at 18. Plaintiffs contend South-Central admitted vicarious liability contingent to the liability of the doctors in their pre-trial filings which constituted a waiver of their independent contractor argument. (Docket No. 205 at 6).

---

[3] South-Central requested the following instruction be read to the jury:

> Article 1540 of the Puerto Rico Civil Code – Independent Contractor
> Article 1540 of the Puerto Rico Civil Code provides that the employers are liable for the damages caused by an independent contractor when they are entrusted with an unreasonably dangerous activity. If you find by a preponderance of the evidence that defendants Dr. Yaritza Suárez Rodríguez and Dr. Alejandro Marmolejo were independent contractors of defendant South Central Emergency Group LLC then you must find in favor of defendant South Central Emergency Group LLC, unless it is determined that the work of a physician in a hospital emergency room constitutes an unreasonably dangerous activity.

(Docket No. 175). The Court denied South-Central's request during trial on December 3, 2025.

In their legal contentions in the *Pretrial Order*, South-Central states that "any liability on its part is vicarious in nature and contingent upon a finding of liability as to defendants Dr. Alejandro Marmolejo and Dr. Yaritza Suárez." (Docket No. 90 at 30). Nowhere in that document does South-Central raise Article 1540 of the Puerto Rico Civil Code nor do they mention the "unreasonably dangerous activity" standard that they now contend is required for their vicarious liability to activate. In a legal proceeding, "[a] final pretrial order is intended to control the subsequent course of the action, and can be modified only to prevent manifest injustice." Rodríguez-García v. Miranda-Marín, 610 F.3d 756, 774 (1st Cir. 2010) (internal quotation marks omitted) (quoting Correa v. Hosp. S.F., 69 F.3d 1184, 1195 (1st Cir. 1995) (quoting Fed. R. Civ. P. 16(e))). "Therefore, '[a]n appellate court should not lightly relieve a litigant from the condign consequences of its failure to list a theory ... at that critical stage of the proceedings,' and 'issues not included in the final pretrial order are generally waived.'" Id. (quoting Correa, 69 F.3d at 1195). Since South-Central did not include its theory of independent contractor liability pursuant to Article 1540 of the Puerto Rico Civil Code, it effectively waived it. The question then becomes whether the issue was tried by consent under Fed. R. Civ. P. 15(b)(2). The Court is of the view that it was not.

Civil No. 23-1345 (RAM)                                                   14

For purposes of Rule 15(b), implied consent to the litigation of an unpleaded claim may arise from one of two generic sets of circumstances. First, the claim may be introduced outside the complaint—say, by means of a sufficiently pointed interrogatory answer or in a pretrial memorandum—and then treated by the opposing party as having been pleaded, either through their effective engagement of the claim or through their silent acquiescence. *See, e.g.*, Action Mfg., Inc. v. Fairhaven Textile Corp., 790 F.2d 164, 167 (1st Cir.). Second, and more conventionally, "[c]onsent to the trial of an issue may be implied if, during the trial, a party acquiesces in the introduction of evidence which is relevant only to that issue." DCPB, Inc. v. City of Lebanon, 957 F.2d 913, 917 (1st Cir. 1992) (superseded by a subsequent case but not on this issue). In other words, "[t]he introduction of evidence directly relevant to a pleaded issue cannot be the basis for a founded claim that the opposing party should have realized that a new issue was infiltrating the case." DCPB, 957 F.2d at 917; accord Galindo v. Stoody Co., 793 F.2d 1502, 1513 (9th Cir.1986) ("It is not enough that an issue may be 'inferentially suggested by incidental evidence in the record'; the record must indicate that the parties understood that the evidence was aimed at an unpleaded issue."). In Rodriguez v. Doral, 57 F.3d 1168 (1st Cir. 1995), the First Circuit found that a "fleeting reference to strict liability contained in the pretrial order cannot by any means of the most

fertile imagination support such a finding" of implied consent. 57 F3d. at 1172-73 (citations and quotations omitted). A *Pretrial Order* that did not articulate an independent contractor defense is in the same boat.

South-Central has admitted that no written contract exists. Therefore, no presumption that Dr. Suarez and Dr. Marmolejo are independent contractors exists. South-Central did not present evidence as to the terms of a verbal contract or other determining factors that could aid the trier of fact in deciding whether Dr. Suarez and Dr. Marmolejo were independent contractors. In the absence of a presumption that Dr. Suarez and Dr. Marmolejo were independent contractors of South-Central, mere conclusory statements do not suffice. The Supreme Court of Puerto Rico has stated that the determining factor is the degree of control that the contracted person must carry out their assignment in a truly independent manner, as opposed to the control exercised by the person who contracts and benefits from their services. *See* <u>Cruz</u>, 2022 WL 2077915, at \*1 (citing <u>S.L.G. Hernández-Beltrán</u>, 151 D.P.R. at 766). Here, South-Central did not provide evidence regarding the degree of control doctors exercised when carrying out their duties or any other essential factors the trier of fact must consider in this kind of analysis.

In fact, the relevant evidence on the record points to Dr. Suarez and Dr. Marmolejo being employees of South-Central; namely:

they work in shifts; they work in Mennonite General Hospital Emergency Room; and they are on direct supervision from South-Central's director, who Dr. Marmolejo repeatedly referred to as the boss ("*el jefe*") during trial. Even assuming, *arguendo*, that Plaintiffs have implied consent to a trial of the issue, the evidence did not support imparting an independent contractor instruction to the jury because, even if South-Central was afforded all reasonable inferences, the evidence did not justify jury consideration of the defense. *See* U.S. v. Rodriguez, 115 F.4th 24 (1st 2004). Because the evidentiary record was so thin, the jury would have been asked to speculate as to the controlling issue to determine independent contractor status.

Consequently, the Court **DENIES** South-Central's renewed Rule 50 motion and their Rule 59(e) motion on the independent contractor issue.

### C.   Damages and Remittitur

"In reviewing an award of damages, the district court is obliged to review the evidence in the light most favorable to the prevailing party[.]" Correa-Carrillo, 594 F. Supp. 3d at 429 (citing Wortley v. Camplin, 333 F.3d 284, 297 (1st Cir. 2003) (internal quotation marks and citation omitted)). "[T]he paramount focus" in this analysis is "the evidence presented at trial." Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 579 (1st Cir. 1989). However, "[a] party seeking remittitur bears a heavy burden

of showing that an award is grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit it to stand." Correa-Carrillo, 594 F. Supp. 3d at 429, aff'd sub nom. Carrillo, 2026 WL 528601 (citing Marcano Rivera v. Turabo Med. Ctr. P'ship, 415 F.3d 162, 173 (1st Cir. 2005). The First Circuit adheres to the "maximum recovery rule," which allows the Court to "direct a remittitur geared to the maximum recovery for which there is evidentiary support," subject to Plaintiff's right to reject the remittitur and instead proceed with a new trial on the disputed damages claim. See Trainor v. HEI Hosp., LLC, 699 F.3d 19, 33 (1st Cir. 2012).

Under Puerto Rico law, relatives are entitled to "compensation for the sufferings, emotional distress, or mental anguish experienced as a consequence of the material or other damages caused directly to their relatives." Santana-Concepcion v. Centro Médico del Turabo, Inc., 768 F.3d 5, 10 (1st Cir. 2014) (citing Santini Rivera v. Serv. Air, Inc., 137 P.R. Dec. 1, 10–12 (1994)).[4] "In fact under Puerto Rico case law those related to a deceased victim by blood ties or by love and affection are deemed to suffer moral damages." Rivera Concepcion v. Pepsi Cola of Puerto

---

[4] Although a new Civil Code was adopted in 2020, the Puerto Rico general tort statute did not suffer substantial changes.  Article 1536 replaced Article 1802 when the new Puerto Rico Civil Code came into effect in 2020. Article 1536 contains the same elements as its predecessor. All caselaw analyzing Article 1802 "remains in effect and will be applied to any actions brought pursuant to Article 1536 of the Puerto Rico Civil Code of 2020." Dumanian v. FirstBank of Puerto Rico, 2024 WL 197429, at p. 3 n.4 (D.P.R. Jan. 17, 2024).

Rico, 288 F. Supp. 2d 167, 173 (D.P.R. 2003); *see also* Santana Otero v. United States, 2009 WL 10721032 (D.P.R. 2009) (awarding $200,000.00 in damages for mental distress and loss of companionship to an adult son who lived in the continental United States and thus was not present when his father was subject to medical malpractice). Following this reasoning, courts have traditionally "awarded moral damages to the parents, spouses, commonlaw spouses, ex-spouses, sons and daughters, and siblings of a deceased." Castillo-Quinones v. Hosp. de la Concepcion, Inc., 2021 WL 2451191, at *2 (D.P.R. 2021) (citing Lopez Nieves v. Marrero Vergel, 939 F. Supp. 124, 126 (D.P.R. 1996)). However, the farther away the blood tie or affective relationship is between the plaintiff and the deceased, the stronger the showing of suffering must be, and the courts have still closely scrutinized the stability of the family nucleus and taken into consideration how strong the family ties were between the plaintiffs and the victim. Id. Moreover, the Supreme Court of Puerto Rico has held that moral damages can only be compensated if plaintiffs show that their emotional condition was substantially affected. Lopez Nieves, 939 F. Supp. at 126. Therefore, a passing affliction would not give rise to an action. Id. "A judgment in this area must necessarily rest upon an evaluation of: (1) the severity of the pain suffered; (2) its duration; and (3) its mental consequences." Serrano v. Nicholson Nursery, Inc., 844 F.Supp. 73,

76 (D.P.R. 1994). In essence, moral damages will be compensated only if it is shown how the health, welfare, and happiness of the plaintiff was really affected by the death. Lopez Nieves, 939 F. Supp. at 126.

South-Central argues the evidence presented at trial showed normal, human feelings upon the loss of a loved one, and not a substantial and enduring affectation. (Docket 200 at 11). South-Central also argued that the uniform award of emotional damages for each plaintiff was not fact-based or lawful because the evidence showed substantial qualitative differences in the nature, closeness, and emotional dependency of each plaintiff's relationship with Mr. Jiménez. Id. South-Central focuses on Ms. Jiménez, Mr. Jiménez Jr., and minor OJ, implying that their relationship with Mr. Jiménez and their testimonies were the least compelling and do not support the damages award granted. Id. at 16. Plaintiffs argued that they did not need to show extreme suffering, but rather that they needed only to show they have experienced emotional pain and suffering due to Mr. Jiménez's death. (Docket 205 at 19). Plaintiffs aver they met this burden through their own testimony presented at trial and that the mere fact that the awards were uniform for each plaintiff does not mean they are unlawful. Id.

Here, the trial evidence supports the jury's liability determination, as well as the reward for mental anguish and

suffering. Through their testimonies, Plaintiffs explained the emotional and mental consequences Mr. Jiménez's death had on them. As to OJ, Mr. Jiménez's minor son, OJ's mother, María, testified that Mr. Jiménez would take OJ to school and pick him up, that they would alternate childcare on weeks and weekends, that OJ spent more time with Mr. Jiménez than with her, and that OJ was hysterical when he learned of his father's passing. *See* (Docket No. 205-6 at 98).

As to Mr. Jimenez Jr., Mr. Jiménez's adult son, he testified he spent summers at his father's house as a child, that he would visit his dad during the week, that they used to go watch baseball games together. *See* (Docket 205-8 at 103). Mr. Jiménez Jr. testified that he "started tearing up all the time" after his father's death and that he was probably depressed for two years. Id. He further stated that he left his job because not being able to visit his father on his trucking route took a toll on him. Id.

Regarding Ms. Jiménez, Mr. Jiménez sister, she testified that they were very close growing up, that she meant to donate him a kidney, but she was not able to because she could not lose weight, that she spent five months living with Mr. Jiménez when she moved to Connecticut, and that she would see Mr. Jiménez on weekends and during special events. *See* (Docket No. 205-9 at 122). Ms. Jiménez testified that Mr. Jiménez was her "partner," her "support," and her "shoulder to cry on." Id. She also stated that she "didn't

know that the depression would get [her] this way" and that she has lost 38 pounds and part of her hair. Id. at 140. Finally, Ms. Jiménez stated that their family had always been very close-knit. Id.

In this case, the jury awarded the same amount ($200,000) to all plaintiffs. While South-Central contends this uniform award is unlawful given the disparities and specifics of each plaintiffs' relationship to Mr. Jiménez and their suffering because of his death, the Court finds no authority prohibiting a jury from awarding the same dollar amount to each plaintiff in this kind of lawsuit. "[C]onverting feelings such as pain, suffering, and mental anguish into dollars is not an exact science." Correa, 69 F.3d at 1198. "The jury is free 'to harmonize the verdict at the highest or lowest points for which there is a sound evidentiary predicate, or anywhere in between ... so long as the end result does not ... strike such a dissonant chord that justice would be denied were the judgment permitted to stand.'" Id. (citing Milone v. Moceri Family, Inc., 847 F.2d 35, 37 (1st Cir.1988)). The Court finds no such dissonant chord in this case. Although the nature of the relationships of each plaintiff with Mr. Jiménez was different, their testimonies showed that they all shared time with Mr. Jiménez, that he was a constant part of their lives, and that his death deeply affected them. The loss of a father is surely not the same as the loss of a brother, but that does not mean that the

damages valuation by a jury must differ. After hearing each of Plaintiffs' testimonies firsthand and having the opportunity to appreciate their demeanor and judge their credibility, the jury could have reasonably concluded that the severity or magnitude of the harm to each Plaintiff was the same when converted into compensation. Moreover, in light of the evidence presented at trial, the Court finds the amounts awarded in this case are not grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit it to stand. *See* Marcano Rivera, 415 F.3d at 173.

Consequently, the Court **DENIES** South-Central's motion for remittitur or for a new trial on the issue of damages.

### IV.   CONCLUSION

For the reasons set forth herein, the Court **DENIES** Dr. Yaritza G. Suárez-Rodríguez and her insurer's, *Motion for Judgement as a Matter of Law or in the Alternative for a New Trial* and co-defendant South Central Emergency Group, LLC's *Motion for Judgment as a Matter of Law, or in the Alternative to Alter or Amend Judgment, for Remittitur or in the Alternative for New Trial with Memorandum of Law in Support in Compliance with Local Rule 7(A).*

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 29th day of May 2026.

s/Raúl M. Arias-Marxuach
UNITED STATES DISTRICT JUDGE